**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X
IN THE MATTER OF THE APPLICATION OF
ELVIS PRESLEY ENTERPRISES LLC                    1:15-mc-00386-DLC
FOR AN ORDER TO TAKE DISCOVERY                   ECF Case
PURSUANT TO 28 U.S.C. § 1782
--------------------------------------------------------------X

**RESPONDENT SONY MUSIC ENTERTAINMENT'S**
**MEMORANDUM OF LAW IN OPPOSITION TO EPE'S APPLICATION**
**FOR THE ISSUANCE OF A SUBPOENA PURSUANT TO 28 U.S.C. § 1782**

**COVINGTON & BURLING LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018

*Attorneys for Respondent*
*Sony Music Entertainment*

TABLE OF CONTENTS

Preliminary Statement .......................................................................................................... 1

Background .......................................................................................................................... 3

    A.    The German Proceeding ............................................................................ 3

    B.    Petitioner's Section 1782 Application. ..................................................... 6

Legal Standard ................................................................................................................... 6

Argument ............................................................................................................................ 7

I.    Petitioner's Section 1782 Application Should Be Denied, Because All of the *Intel* Factors Weigh Against the Petition. ............................................................................ 7

    A.    Petitioner Seeks Discovery of Information That is Within the Reach of the German Court ............................................................................................. 8

    B.    The German Proceeding Has Been Dismissed on the Merits. ............... 11

    C.    Petitioner is Attempting to Circumvent Proof-Gathering Restrictions. ............... 12

    D.    The Application is Unduly Intrusive and Burdensome. ......................... 14

        1.    Petitioner's Requests Lack Relevance. ..................................... 15

        2.    Petitioner's Requests are Overbroad and Extraordinarily Burdensome. ............................................................................... 17

        3.    Petitioner's Requests Suffer Yet Other Deficiencies. .............. 19

II.    Petitioner's Section 1782 Application Should Also Be Denied Because It Improperly Seeks to Compel SME to Prepare New Documents. .................................... 20

Conclusion ........................................................................................................................ 22

T<span>ABLE OF</span> A<span>UTHORITIES</span>

**Page(s)**

**Cases**

*In re Asia Maritime Pacific Ltd.*,
  2015 WL 5037129 (S.D.N.Y. Aug. 26, 2015) ........................................................................16

*In re Auto-Guadaloupe Investissement S.A.*,
  2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012) ...................................................................7, 12

*Aventis Pharma v. Wyeth*,
  2009 WL 3754191 (S.D.N.Y. Nov. 9, 2009) ..................................................................14, 20

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
  673 F.3d 76 (2d Cir. 2012) .............................................................................................7, 12

*Cowart v. Abdel-Razzaq*,
  2010 WL 1533381 (W.D.N.Y. Apr. 15, 2010) .....................................................................24

*Euromepa S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d Cir.1995) ...........................................................................................15, 20

*In re Fischer Advanced Composite Components AG*,
  2008 WL 5210839 (W.D. Wa. 2008) .....................................................................................9

*Fleischmann v. McDonald's Corp.*,
  466 F. Supp. 2d 1020 (N.D. Ill. 2006) .................................................................................21

*Fuhr v. Deutsche Bank, AG*,
  615 F. App'x 699 (2d Cir. 2015) ............................................................................................9

*In re Godfrey*,
  526 F. Supp. 2d 417 (S.D.N.Y. 2007) .....................................................................................7

*In re Gushlak*,
  2011 WL 3651268 (E.D.N.Y. Aug. 17, 2011) ......................................................................14

*In re Harbour Victoria Inv. Holdings Ltd.*,
  2015 WL 4040420 (S.D.N.Y. June 29, 2015) .................................................................13, 20

*Insituform Techs. Inc. v. Cat Contracting, Inc.*,
  168 F.R.D. 630 (N.D. Ill. 1996) ...........................................................................................21

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ....................................................................................................... *passim*

*In re Ishihara Chem. Co.*,
   121 F. Supp. 2d 209 (E.D.N.Y. 2000) ................................................................21

*In re Kreke Immobilien KG*,
   2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013) ......................................9, 13, 14, 21

*Lehman v. Kornblau*,
   206 F.R.D. 345 (E.D.N.Y. 2001) ........................................................................24

*In re Macquarie Bank Ltd.*,
   2015 WL 3439103 (D. Nev. May 28, 2015) ..................................................9, 20

*Malev Hungarian Airlines v. United Techns. Int'l, Inc.*,
   964 F.2d 97 (2d Cir. 1992) ...........................................................................17, 21

*In re Microsoft Corp.*,
   428 F. Supp. 2d 188 (S.D.N.Y. 2006) ..................................................................8

*Nova Biomedical Corp. v. i-STAT Corp.*,
   182 F.R.D. 419 (S.D.N.Y. 1998) ........................................................................16

*In re OOO Promnefstroy*,
   2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) ................................................8, 21

*Richard v. Girdich*,
   2007 WL 405863 (N.D.N.Y. Feb. 1, 2007) ........................................................24

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
   376 F.3d 79 (2d Cir. 2004) ...................................................................................9

*In re Servicio Pan Americano de Proteccion, C.A.*,
   354 F. Supp. 2d 269 (S.D.N.Y. 2004) ................................................................12

*Siemens AG v. Western Digital Corp.*,
   2013 WL 5947973 (C.D. Cal. Nov. 4, 2013) ......................................................21

*In re Sumar*,
   123 F.R.D. 467 (S.D.N.Y. 1988) ........................................................................22

*Estate of Ungar v. Palestinian Auth.*,
   451 F. Supp. 2d 607 (S.D.N.Y. 2006) ................................................................21

*United States v. Int'l Bus. Machs. Corp.*
   83 F.R.D. 97 (S.D.N.Y. 1979) ............................................................................19

**Statutes**

28 U.S.C. § 1782 ...................................................................................................1,21

iii

**Other Authorities**

Fed. R. Civ. P. 26....................................................................................................2, 15, 17, 18

Fed. R. Civ. P. 33...............................................................................................................24

Fed. R. Civ. P. 45...........................................................................................................16, 23

Respondent Sony Music Entertainment ("SME") respectfully submits this memorandum of law, together with the accompanying declarations of Henning Harte-Bavendamm, Wade Leak, and Caroline Symannek, in opposition to the application (the "Application") of Elvis Presley Enterprises LLC ("Petitioner" or "EPE") for an order authorizing it to serve a purported subpoena duces tecum on SME in aid of a foreign proceeding pursuant to 28 U.S.C. § 1782.

## PRELIMINARY STATEMENT

This proceeding arises out of Petitioner's alleged need to "verify" the completeness and accuracy of a comprehensive spreadsheet, two license agreements, and additional information produced to EPE by Arista Music ("Arista"), a wholly-owned subsidiary of SME, in a now-dismissed German lawsuit.

The Application should be denied for at least four reasons. *First*, it is improper to use Section 1782 to seek documents from a participant in the foreign proceeding, or that otherwise are within the jurisdiction of the foreign court. Here, all of the information that Arista already produced in the German proceeding was obtained from SME, and any other relevant information SME has is available to Arista. Courts routinely find that seeking documents from the corporate parent of an entity that is a participant in the foreign proceeding is tantamount to seeking them from the participant itself, and impermissible.

*Second*, the German lawsuit has now been dismissed on the merits. While EPE purports to want the documents for appeal, it has not yet filed one. Even if it did, admission of new evidence on appeal is as unlikely in Germany as it would be in the U.S. That EPE seeks documents in connection with a dismissed lawsuit weighs heavily against the request.

*Third*, the Application seeks to circumvent substantive restrictions—not just procedural limitations on discovery—imposed by the German courts. EPE brought a substantive cause of action in Germany seeking relief in the form of the provision of certain information and

documents.  The German court issued a judgment setting forth the scope of what Arista was required to produce.  If EPE believes, however mistakenly, that Arista has not complied with that judgment, the appropriate remedy is to enforce that judgment in Germany.  In fact, however, EPE's requests far exceed the scope of the both the judgment and the German litigation.  By instead seeking additional information from Arista's corporate parent under Section 1782, EPE is attempting to circumvent the substantive restrictions imposed by the German court on what Arista was required to provide.

*Finally*, EPE has not justified the discovery even under the ordinary principles of the Federal Rules of Civil Procedure.  EPE has not even tried to explain how the specific information it seeks is relevant to the German litigation "and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[1]  Indeed, as detailed below, the request appears to be a subterfuge by which EPE's counsel, which regularly represents litigants against SME, hopes to access confidential SME information that is unrelated to EPE and that counsel has repeatedly sought, without success, in other actions.

The bottom line is that Section 1782 assists foreign litigants in obtaining targeted discovery in the United States of materials that cannot be obtained in the foreign litigation due to technical limitations.  Here, by contrast, EPE chose to assert a substantive claim for information against Arista in Germany, under German law, and a German court defined the scope of what Arista was required to provide.  That court is plainly better equipped to determine whether Arista

---

[1] Fed. R. Civ. P. 26(b)(1).

complied with its order and, if it did not, what further information EPE is entitled to receive (in connection with a lawsuit that has already been dismissed). Any such information held by SME is accessible to Arista in that proceeding, without resort to Section 1782. Accordingly, Petitioner's Application should be denied in its entirety.

BACKGROUND

### A.    *The German Proceeding*

In December 2010, EPE commenced a proceeding (the "German Proceeding") against Arista in the Regional Court of Munich I (Landgericht München I) (the "German Regional Court"). Included in this proceeding was a motion by EPE for the disclosure of information by Arista regarding the manner and scope of exploitation in Germany of sound recordings recorded by Elvis Presley on or before February 28, 1973 that are subject to a Buyout Agreement dated March 1, 1973 (the "Master Recordings"). (Supplemented Declaration of Henning Harte-Bavendamm ("Harte-Bavendamm Decl.") ¶¶ 6-7.) The purpose of this motion was to obtain information to assist EPE in determining whether it had a claim for additional remuneration under Section 32a of the German Copyright Act, which applies exclusively to exploitation in Germany. (*Id.* ¶ 7.) This was not a procedural request for discovery in connection with EPE's Section 32a claim, however. Rather, the claim for information was a substantive cause of action under German law, seeking relief in the form of a judgment requiring the provision of certain information. (*Id.* ¶ 8.)

EPE's claim was dismissed by the German Regional Court in November 2011, after which EPE filed an appeal with the Higher Regional Court of Munich (Oberlandesgericht München) (the "German Higher Regional Court") on January 26, 2012. (*Id.* ¶ 9.)

On July 18, 2013, the German Higher Regional Court entered a judgment that, *inter alia*, required Arista to supply certain information for the time period beginning on April 1, 2008 (the

3

"Judgment").  (*Id.* ¶ 10.)  Specifically, the Judgment ordered Arista to disclose information about the individual Presley recordings recorded on sound media by Arista's predecessor up to and including February 28, 1973 and that had been exploited in Germany since April 1, 2008, including: a breakdown of individual recordings and their versions; the sound media on which they were released; their titles; the sales revenues generated from the reproduction, distribution, and digital exploitation of these sound media; all cost factors and profits generated; and royalties received for public broadcast.  (*Id.* ¶ 24, Ex. B at 2.)  The Judgment also required Arista to disclose royalties received from the exploitation of these recordings by third parties, including the names and addresses of licensees and copies of the relevant license agreements.  (*Id.* ¶ 24.)

The Judgment thus defined the scope of the relief that EPE was entitled to receive on its substantive claim under German law for provision of information and documents (namely, copies of certain license agreements) by Arista.  (*Id.* ¶ 25.)

Because the Judgment was only provisionally enforceable, under German law Arista was not required to begin producing documents until EPE asked it to do so.  EPE did not so until a year later, in July 2014.  (*Id.* ¶¶ 26, 29.)  In September and October 2014, Arista provided EPE with comprehensive information in response to the Judgment.  (*Id.* ¶ 29.)  This included a detailed spreadsheet compiling revenue and other information for each of the Presley recordings exploited in Germany during the relevant time period.  (*Id.* ¶ 30; Declaration of Caroline Symannek ("Symannek Decl.") ¶ 7.)  Arista provided the relevant license agreements to EPE in December 2014.  (Harte-Bavendamm Decl. ¶ 33.)  Arista obtained all of this information from its parent, SME.

In the succeeding months, Arista's counsel responded to queries from EPE's counsel and provided additional information regarding Arista's production.  (*Id.* ¶¶ 31-32.)  EPE's counsel

asserted that Arista had not provided sufficient information, and acknowledged that they could apply to the German Regional Court for relief in connection with these purported deficiencies in Arista's production. (*Id.* ¶¶ 34-38.)

In the time being, on December 30, 2014, EPE resumed the German Proceeding in the German Regional Court and added SME Germany as a party. (*Id.* ¶¶ 11, 34.) In April 2015, the German Regional Court notified the parties that the German Proceeding would resume on December 16, 2015. (*Id.* ¶ 11, Ex. C.) At no time did EPE apply to the German court for relief from Arista's purported failure to comply with the judgment. (*Id.* ¶ 39.)

The German Regional Court convened the hearing on December 16, 2015 as scheduled. During the oral hearing, EPE's German counsel did not argue that the information provided by Arista in response to the Judgment was deficient; mention the existence of this American proceeding; or request that the German Regional Court postpone the German Proceeding to give EPE time to complete this proceeding. (*Id.* ¶ 13.) After hearing from the parties, the court delivered an oral ruling dismissing EPE's claims on all counts. (*Id.* ¶¶ 13-14.)

The court's oral ruling was followed up by a final written judgment that was served upon the parties on December 30, 2015 (the "Dismissal"). In the Dismissal, the German Regional Court explained that that there was no apparent disproportion between the consideration paid to EPE and the actual benefit obtained by Arista or SME Germany, so EPE was not entitled to any additional remuneration under Section 32a of the German Copyright Act. (*Id.* ¶¶ 15-16.) Although the German Regional Court noted that Arista was required to submit information to EPE, and did so, the court did not state that Arista's production of information was deficient, or that its ruling would have been different if Arista has produced more information. (*Id.* ¶ 17.)

The German Regional Court thus dismissed the German Proceeding in full.  (*Id.* ¶ 16.) EPE is entitled to appeal the Dismissal to the German Higher Regional Court.  (*Id.* ¶ 19.) Although Petitioner's counsel has indicated that EPE intends to file an appeal in Germany, it has not yet done so.  (*Id.*)

### B.      Petitioner's Section 1782 Application.

Petitioner commenced this proceeding *ex parte* on December 1, 2015.  In addition to seeking leave to serve a subpoena duces tecum on SME, Petitioner requested that this Court proceed on an expedited basis and issue an Order to Show Cause compelling compliance with the proposed subpoena.  (Pet'r's App. ¶ 9.)

Judge Cote, sitting in Part 1, declined to grant Petitioner's Application on December 1, 2015, and instead requested that the parties appear before her within the next few days.

On December 7, 2015, the parties appeared before Judge Cote, prior to which counsel for SME provided Judge Cote and counsel for EPE with an affidavit from Arista's German counsel, Henning Harte-Bavendamm (the "First Harte-Bavendamm Declaration," attached as Ex. A to the Harte-Bavendamm Declaration.).  After reviewing the First Harte-Bavendamm Declaration and hearing oral submissions from counsel for both parties, Judge Cote declined to grant Petitioner's Application, and set a schedule to complete briefing.  (ECF No. 6.)

In light of the outcome of the December 16, 2015 hearing in Germany, the briefing schedule was amended to give the German Regional Court time to issue, and SME time to translate and review, the Dismissal. (ECF Nos. 9, 15, 17.)

LEGAL STANDARD

In order to obtain relief under Section 1782, Petitioner must meet three statutory requirements:

(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person.[2]

Once this initial showing has been made, whether to grant discovery is in the Court's discretion.[3]  In exercising that discretion, the Court is to consider the four factors identified by the Supreme Court in *Intel*: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether "unduly intrusive or burdensome requests" should be "rejected or trimmed."[4]

In addition to satisfying the statutory requirements and the *Intel* discretionary factors, the Application must also comport with the Federal Rules of Civil Procedure.[5]

ARGUMENT

**I.     Petitioner's Section 1782 Application Should Be Denied, Because All of the *Intel* Factors Weigh Against the Petition.**

The "objective" of Section 1782 is "to assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international

---

[2] *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (citations omitted).

[3] *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004).

[4] *Id.* at 264-65.

[5] *In re Auto-Guadaloupe Investissement S.A.*, 2012 WL 4841945, at *4 (S.D.N.Y. Oct. 10, 2012) ("A court considering a request for discovery under § 1782 must also be mindful of U.S. federal discovery procedures under Rules 26 and 45 of the Federal Rules of Civil Procedure.").

comity, they cannot obtain under their own laws."[6]  As detailed below, however, Petitioner's

Application is entirely inconsistent with that objective.  *First*, the information that it seeks is

already within the reach of the German courts.  *Second*, the foreign proceeding in support of

which Petitioner filed this Application has been dismissed in full.  *Third*, Petitioner is abusing

Section 1782 in an attempt to circumvent the substantive limitations of relief granted by the

German Higher Regional Court.  *Fourth*, the Application does not comply with the Federal

Rules.  Because all of the *Intel* factors weigh heavily against Petitioner, the Application should

be denied in its entirety.

### A. Petitioner Seeks Discovery of Information That is Within the Reach of the German Court.

Although SME is not a party to the German Proceeding, the first discretionary factor

weighs heavily against Petitioner.  The rationale for this factor is that "nonparticipants in the

foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their

evidence, available in the United States, may be unobtainable absent § 1782(a) aid."[7]  Where the

targets of a Section 1782 application "are not 'participants,' *per se*, in the underlying [foreign]

proceeding," but "the evidence is available to the foreign tribunal," assistance under Section

1782 therefore "is both unnecessary and improper."[8]

Accordingly, courts routinely find that discovery from a corporate parent of a participant

in the foreign proceeding is effectively an attempt to take discovery of a participant, and

---

[6] *Intel Corp.*, 542 U.S. at 262.

[7] *Id.* at 264.

[8] *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006); *see also In re OOO Promnefstroy*, 2009 WL 3335608, at *5 (S.D.N.Y. Oct. 15, 2009) ("[I]t is the foreign tribunal's ability to control the evidence and order production, not the nominal target of the § 1782 application, on which the district court should focus.").

improper.[9]   Courts likewise disfavor using Section 1782 to obtain discovery from another entity

that is otherwise related to, and whose documents are available to, the party to the foreign

proceeding.[10]

Under this standard, the Application here is clearly improper.   Petitioner contends that in

order to "verify" information Arista produced in response to the Judgment, it needs to obtain

additional documents and information from SME that allegedly "relate" to EPE's now-dismissed

claims in the German Proceeding.   (Pet'r's Appl. ¶ 7; Pet'r's Mem. 16, 20-21; Dec. 7, 2015

Conf. Tr. 3:1-6 ("[T]he applicant seeks to verify information produced by Arista in the form of

an Excel spreadsheet and it seeks to verify the accuracy of that information.").)   Petitioner also

complains that Arista's production was incomplete and that Arista refused to produce anything

further when requested.   (Pet'r's Mem. 4-5, 11, 20-21; Czychowksi/Nordemann Decl. ¶¶ 18-19,

24.)   Accordingly, EPE claims that its "only recourse to challenge and verify the spreadsheet for

purposes of the German Proceeding is to obtain the information from Sony Music Entertainment

in the United States."   (Pet'r's Mem. 11.)

---

[9] *See Fuhr v. Deutsche Bank, AG*, 615 F. App'x 699, 700 (2d Cir. 2015) ("We find no error with
the district court's conclusion that while the Section 1782 petition names Deutsche Bank AG as
respondent, Fuhr actually seeks information from Deutsche Bank (Suisse)."); *In re Kreke
Immobilien KG*, 2013 WL 5966916, at *5 (S.D.N.Y. Nov. 8, 2013) ("To the extent that the
petitioner seeks documents from [subsidiary]—and is only doing so through [parent] because
[subsidiary] is now its wholly-owned subsidiary—discovery is fundamentally being sought from
a participant in the German proceeding."); *In re Fischer Advanced Composite Components AG*,
2008 WL 5210839, at *3 (W.D. Wa. 2008) ("[Applicant's] requests are unduly burdensome
primarily because [applicant] has failed to show why the information it seeks [from the parent]
could not equally be obtained by [the subsidiary party to the foreign proceeding].").

[10] *See Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004) (where
applicant sought information from U.S. law firm for use in German litigation, "for all intents and
purposes petitioners [were] seeking discovery from [] their opponent in the German litigation,"
the law firm's client), *aff'g In re Schmitz*, 259 F. Supp. 2d 294 (S.D.N.Y 2003); *In re Macquarie
Bank Ltd.*, 2015 WL 3439103, at *6 (D. Nev. May 28, 2015) (finding that the first *Intel*
discretionary factor "militates against allowing § 1782 discovery when the petitioner effectively
seeks discovery from a participant in the foreign tribunal even though it is seeking discovery
from a related, but technically distinct entity").

But Arista has access to any information that is held by SME and relates to Arista's business.  As set forth in the accompanying declaration of Wade Leak, SME's Deputy General Counsel, (1) documents and information regarding Arista artists that are held by SME are deemed by Arista and SME to be within the possession, custody, and control of Arista; and (2) SME will continue to cooperate with, and make responsive materials available to, Arista in the context of the German Proceeding (subject to rules governing that procedure).  (Declaration of Wade Leak ("Leak Decl.") ¶ 8; *see also* Dec. 7, 2015 Conf. Tr. 17:4-15.)  Indeed, Arista already obtained and produced in the German Proceeding responsive documents and information from SME.  (Leak Decl. ¶ 3.)

And to the extent EPE claims that Arista's production was deficient (which, for the reasons described in Section I.D.1. below, it was not), EPE's recourse is with the German courts, not this Court.  Arista did not have the discretion to choose which information to produce or how to respond to the Judgment.  Rather, it was required to fully comply with the Judgment, just as with any other judgment of a German court.  (Harte-Bavendamm Decl. ¶ 43.)  Section 888 of the German Code of Civil Procedure entitles EPE to file for an application before the German Regional Court to impose a fine (or even imprisonment) for failure to comply with the Judgment. (*Id.* ¶ 27.)

EPE's counsel has acknowledged as much.  In its December 30, 2014 submission reinstating the German Proceeding, counsel stated that, notwithstanding its complaints about the information disclosed by Arista pursuant to the Judgment, it would "initially make due, *without waiving its right* to the claim for information," and "reserve[d] the right to make a further motion to have the accuracy of the information sworn under oath."  (Czychowksi/Nordemann Decl., Ex. A at 5, 6 (emphasis added).)  In addition, in its letter dated June 23, 2015, counsel threatened to

apply for a court order imposing a fine on Arista for failing to comply with the Judgment. (Harte-Bavendamm Decl. ¶ 37; Czychowski/Nordemann Decl., Ex. B at 2.)   Petitioner's references to the general nature of German *discovery* are thus inapposite.  (Pet'r's Mem. 11, Czychowksi/Nordemann Decl. ¶¶ 25-28; Harte-Bavendamm Decl. ¶ 42.)

EPE, however, never pursued the relief that has been available to it since at least December 2014, when Arista completed its production, and that is still available *to this day*. (Harte-Bavendamm Decl. ¶ 44.)  Under these circumstances, assistance under Section 1782 is not only unnecessary, but improper.

### B.     The German Proceeding Has Been Dismissed on the Merits.

The second discretionary factor considers, among other things, "the nature of the foreign tribunal [and] the character of the proceedings underway abroad."[11]   Because the very proceeding in support of which Petitioner filed the Application is no longer underway, this factor weighs heavily against granting the Application.

Petitioner has indicated that it intends to appeal the Dismissal.  (*See* Letter from Jonathan M. Sperling to Judge Denise L. Cote (Jan. 7, 2016), ECF No. 17.)  However, German appellate courts are largely limited to reviewing issues of law, and typically do not permit the introduction of new facts and evidence unless there are special reasons justifying such exception.  (Harte-Bavendamm Decl. ¶¶ 19-22.)  Petitioner has not explained how these materials could be used on appeal.[12]

In *Brandi-Dohrn*, the Second Circuit held that the fact that a German proceeding had been dismissed—and the unlikely inadmissibility of new evidence on appeal—did not mean that

---

[11] *Intel Corp.*, 542 U.S. at 264.

[12] To the extent Petitioner raises on reply new arguments regarding the use on appeal of materials obtained in this proceeding, SME reserves the right to seek leave to file a sur-reply.

Section 1782's requirement that the discovery be "for use" in a foreign proceeding was not met.[13]   The court therefore reversed the district court's conclusion that the *statutory* prerequisites were not satisfied.[14]   But the Second Circuit acknowledged the district court's *discretion* under the second *Intel* factor to determine that discovery was not warranted.[15]   That is clearly the case here, where EPE has only a slim chance of being able to use any new evidence in connection with a hypothetical appeal, it seeks discovery from the corporate parent of the participant in the now-dismissed German proceeding, it has declined to pursue the relief available to it in Germany, and it has failed to explain the relevance of its suspiciously overbroad requests.

### C.       Petitioner is Attempting to Circumvent Proof-Gathering Restrictions.

The third discretionary factor considers whether an application under Section 1782 "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."[16]   EPE elected to assert a substantive claim for information under German law against Arista in German court.   The German court defined in its judgment the scope of the information that Arista was required to produce.   (Harte-Bavendamm Decl. ¶ 25.)   German law also provides EPE with efficient mechanisms for enforcing the Judgment if it believed Arista did not comply.   (*Id*. at ¶¶ 27-28.)

Moreover, even if EPE's purported inability to seek redress in Germany is characterized as a discovery issue, EPE cannot seek recourse here:

> § 1782 was not intended as a vehicle to *avoid* … an unfavorable discovery decision from a foreign tribunal.   … While there is no exhaustion requirement for seeking discovery under § 1782, the district

---

[13] 673 F.3d at 82.

[14] *Id.* at 84.

[15] *Id.* at 83.

[16] *Intel Corp.*, 542 U.S. at 265.

court may, in its discretion, properly consider a party's failure to first attempt discovery measures in the foreign jurisdiction.[17]

Here, EPE has not explained why it did not pursue the relief that EPE's German counsel has conceded is available to it in Germany.  *See supra* Section I.A.  While Petitioner's *brief* contends that "EPE has no recourse under German law to challenge Arista's refusal to provide the additional information," Petitioner's German counsel nowhere state that EPE cannot compel compliance with the Judgment in Germany.  (*Compare* Pet'r's Mem. 5 *with* Czychowksi/Nordemann Decl. ¶¶ 25-28.)

The third *Intel* factor also weighs against Petitioner to the extent it is attempting to circumvent *U.S.* proof-gathering restrictions.[18]  As described in Section I.D.1 below, the Application includes requests for materials that are, on their face, irrelevant to EPE's now-dismissed German claims but that Petitioner's counsel has sought from SME in other U.S. lawsuits on behalf of other clients.  (Leak Decl. ¶¶ 9-11.)  Section 1782 cannot be used as cover for a fishing expedition to obtain materials for use in other litigation.[19]

Finally, Petitioner waited nearly two and a half years from the date of the Judgment, and nearly one year from the date that Arista completed the disclosure ordered by the Judgment (which was also a mere 15 days from the date that the German Proceeding was scheduled to resume) to seek the assistance of this court under Section 1782.  EPE could have requested an

---

[17] *In re Kreke Immobilien KG*, 2013 WL 5966916, at *6 (emphasis and alterations in original, internal quotation marks and citations omitted).

[18] *See In re Harbour Victoria Inv. Holdings Ltd.*, 2015 WL 4040420, at *7 (S.D.N.Y. June 29, 2015) ("*Intel* indicates that the Supreme Court contemplated that a party might use § 1782(a) as an attempt to circumvent U.S. proof-gathering restrictions, just as much as those of a foreign country.").

[19] *Id.* ("[T]he Court concludes that concern for abuse of the § 1782 petition, as in the form of a fishing expedition to determine what other proceedings might be brought, is equally relevant to the exercise of its discretion.").

adjournment of the December 16, 2015 hearing to pursue relief in the German courts, but it chose not to.  (Harte-Bavendamm Decl. ¶¶ 21, 47.)  Even today, EPE could still initiate a proceeding before the German Regional Court to enforce the Judgment that is the purported basis of this Application.  (*Id.* at ¶¶ 44-45, 47.)  This is precisely the type of conduct—failing to exercise rights available in the foreign proceeding, and then rushing to the U.S. for last-minute relief—that courts have found to constitute an end-run around foreign proof gathering restrictions.[20]

### D.     The Application is Unduly Intrusive and Burdensome.

The final discretionary factor considers whether a Section 1782 application is "unduly intrusive or burdensome."[21]  As courts have explained, Section 1782 relief is more appropriate in respect to "applications that seek either a single document or only those documents relating to a particular event."[22]  Consistent with Section 1782's mandate that discovery be taken in accordance with the Federal Rules, courts applying this factor are guided by Rules 26 and 45, as Petitioner concedes.[23]  (Pet'r's Mem. at 16.)  "[I]f the district court determines that a party's discovery application under section 1782 is made in bad faith, for the purpose of harassment, or

---

[20] *See Aventis Pharma v. Wyeth*,  2009 WL 3754191, at *1 (S.D.N.Y. Nov. 9, 2009) ("[D]espite the fact that it appears that the French Court has the jurisdictional reach over these documents, in five years, [applicant] has never sought the subject § 1782 documents in the French Tribunal. Regardless of whether [applicant] could have gotten the French Courts to compel production of the documents now sought, [applicant's] motion is clearly an attempt to circumvent foreign proof gathering restrictions . . . .  [T]his Court would not be providing 'efficient means of assistance' to the litigants or the French Courts by allowing [applicant] to rush to a U.S. Court on the eve of an appeal in the hopes of obtaining discovery.").

[21] *Intel Corp.*, 542 U.S. at 265.

[22] *In re Kreke Immobilien KG*, 2013 WL 5966916, at *7.

[23] *In re Gushlak*, 2011 WL 3651268, at *6 (E.D.N.Y. Aug. 17, 2011).

unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto, just as it can if discovery was sought in bad faith in domestic litigation."[24]

Here, Petitioner seeks broad categories of information and documents that bear little discernible relevance to any alleged deficiency in Arista's production in connection with the German Proceeding.  Moreover, as detailed in the accompanying Declaration of Caroline Symannek, the burden they would impose is extraordinary.  Accordingly, they should be denied in their entirety.  (*See* Pet'r's App., Ex. A, Requests 1-14.)

> 1.    Petitioner's Requests Lack Relevance.

Relevance and usefulness of materials sought are fundamental requirements of a Section 1782 application.[25]  However, Petitioner's Application does not even try to explain how its extensive requests for information and documents are relevant to any proceeding it may intend to pursue in Germany.

*First*, although Petitioner contends that it needs to "verify" information provided by Arista in response to the Judgment (Pet'r's Appl. ¶ 7), Petitioner does not explain what, in the over 28 megabytes of data Arista has already provided, is incomplete, inaccurate, or in need of verification (nor does Petitioner explain, given that SME was the source of the data Arista already produced, how asking for it again from SME could "verify" anything).

Instead, Petitioner purports to identify two deficiencies in Arista's production, both of which are baseless.  The first alleged deficiency is Arista's failure to produce source documents. (Pet'r's Mem. 4.)  However, source documents were outside the scope of both EPE's request in the German Proceeding and the Judgment.  (Harte-Bavendamm Decl. ¶¶ 25, 41.)  Indeed, in its

---

[24] *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 n.6 (2d Cir.1995).

[25] Fed. R. Civ. P. 26(b)(1); *Intel Corp.*, 542 U.S. at 262.

June 23, 2015 letter, EPE did not even request that Arista produce source documents. (*Id.* at ¶ 41; Czychowksi/Nordemann Decl. Ex. B at 2.) The only documents that Arista was ordered to produce were certain licensing agreements, and Petitioner does not contend here that Arista failed to produce them. In addition, much of the information from which Arista's production was prepared came from databases, not individual, tangible documents. (Symannek Decl. ¶¶ 12-15.)

The second alleged deficiency is Arista's failure to produce cost and profit information. (Pet'r's Mem. 4.) This is simply incorrect; Arista produced the cost and profit information available to it and has repeatedly explained why this information cannot be provided with any additional detail. (Harte-Bavendamm Decl. ¶¶ 32, 38, 40.) Petitioner has not put forth any reason to believe that Arista's explanation was untrue (nor could it). Beyond those unsubstantiated contentions, Petitioner makes no attempt to explain the relevance of its requests.

*Second*, even if there was a gap in Arista's production, Petitioner offers literally no explanation as to how the specific materials that it seeks fill such a gap, or why the requested information is otherwise relevant to EPE's claims. Nor has Petitioner explained how they remain relevant after dismissal of its case, or could be used in the event Petitioner files an appeal.

Petitioner's failure to explain how the discovery it seeks in this proceeding is relevant to or will be useful in any German lawsuit calls into question whether these materials are "for use" in a foreign proceeding at all—one of the statutory requirements of Section 1782. But this court need not decide that question. Even if Petitioner has satisfied the statutory requirements of Section 1782, this Court can and should exercise its discretion to deny an application that "is an overly broad fishing expedition that does nothing to further the twin aims of the statute."[26]

---

[26] *In re Asia Maritime Pacific Ltd.*, 2015 WL 5037129, at *3 (S.D.N.Y. Aug. 26, 2015).

2.      Petitioner's Requests are Overbroad and Extraordinarily Burdensome.

The apparent irrelevance of Petitioner's requests is particularly striking when considered in light of their breadth.  In evaluating whether discovery requests are unduly burdensome, a court must consider, among other things, whether the requested materials are "proportional to the needs of the case, considering the importance of the issues at stake in the action," whether the burden of the requests outweigh their likely benefit, and whether the requests are unreasonably cumulative or duplicative.[27]  All of these considerations weigh in favor of rejecting Petitioner's Application.

*First*, Petitioner asks SME to prepare new reports that include a substantial amount of information that was already provided by Arista in the German Proceeding.  (*See* Pet'r's App., Ex. A, Requests 2, 4, 5, 6; Symannek Decl. ¶¶ 16-18.)  Because Petitioner demands that SME integrate this duplicative information within new custom reports, however, SME must undertake the time- and labor-intensive process of preparing, running, and quality checking entirely new database queries.  SME cannot simply supplement Arista's existing production, as Petitioner erroneously contends.  (Symannek Decl. ¶¶ 22-23.)  The new information that Petitioner seeks is also extensive.  Notably, Petitioner's requests for entirely new custom reports regarding unallocated income would also require SME to undertake an extremely burdensome, time-intensive—and in many instances, manual—review of its accounting system.  (*Id.* ¶¶ 30-32.) Petitioner also seeks information that SME simply does not maintain or have access to.  (*Id.* ¶¶ 24-26, 32.)  EPE has not explained at all how this burden is proportional to the issues at stake.

---

[27] Fed. R. Civ. P. 26(b)(1), (2)(C)(i); *Malev Hungarian Airlines v. United Techns. Int'l, Inc.*, 964 F.2d 97, 102 (2d Cir. 1992).

*Second*, EPE's claim in Germany related exclusively to the exploitation of the Master Recordings in Germany.  (Harte-Bavendamm Decl. ¶ 7.)   However, many of Petitioner's requests for new custom reports are either not limited to Germany (Pet'r's App., Ex. A, Requests 1-3, 11), to the Master Recordings (*Id.* at Requests 7, 9), or to either (*Id.* at Requests 8, 10, 12, 14).  On their face, these requests include information and documents that are unrelated to the German Proceeding at all.

Most significantly, Petitioner requests *all* so-called International Repertoire Licensing ("IRL") agreements that SME has entered into since January 1, 2008 (*Id.* at Request 12)—not limited to those covering the Master Recordings—notwithstanding the fact that Petitioner has not alleged in this proceeding that the license agreements produced by Arista in Germany were incomplete.  Petitioner's counsel, who frequently represents litigants against SME, has sought to obtain these same confidential, commercially sensitive documents in at least three other actions. (Leak Decl. ¶¶ 9-11.)   Each time, SME has successfully resisted on the grounds that the documents were not relevant to the party's claims.  (*Id.*)  Now, counsel seeks them again in this proceeding, even though the documents have nothing to do with EPE's claim in Germany.

Petitioner also seeks blanket access to SME's accounting records (Pet'r's App., Ex. A, Request 14) and an extensive accounting of Petitioner's unallocated income (Pet'r's App., Ex. A, Requests 9-11, 13).  Petitioner has not even attempted to explain how these invasive requests are relevant to the foreign proceeding.  Petitioner should not be permitted to exploit Section 1782 to engage in a fishing expedition for commercially-sensitive documents and information regarding SME's global operations.

*Fourth*, although EPE did not seek any documents in the German Proceeding, Petitioner now demands the SME produce of all of the documents on which the requested custom reports

were prepared.  (Pet'r's App., Ex. A, Requests 1, 2, 4-11, 13.)  This far exceeds the scope of what EPE sought in the German Higher Regional Court, and what that court determined EPE was entitled to receive.  (Harte-Bavendamm Decl. ¶¶ 25, 41.)  In addition, most of the information that Petitioner seeks is maintained on databases.  It is unclear what Petitioner means by "source documents," or how such materials could be produced.  (*See* Symannek Decl. ¶ 15.)

### 3.   Petitioner's Requests Suffer Yet Other Deficiencies.

Petitioner erroneously contends that its requests are "sufficiently detailed to permit easy identification of responsive documents and information."  (Pet'r's Mem. 16.)  To the contrary, Petitioner's requests include vague, catch-all terms such as "all available data fields," "other sound recording identifiers," "Pending, Unmatched and/or Unprocessed Income," and "unallocated monies or credits, bonus, payments, advances, or fees."  (Symannek Decl. ¶¶ 20, 26, 30.)  Petitioner also requests that SME submit reports that include but are not limited to specific categories of information.  (Pet'r's App., Ex. A, Requests 1, 2, 4-6, 13.)  Since these reports are not kept in the ordinary course of business, but rather would be custom-prepared for Petitioner (Symannek Decl. ¶ 12), it is not clear what level of information would satisfy Petitioner's requests.  This is thus not, as Petitioner contends, a case in which the applicant has provided "adequate" particularization of the materials sought.[28]

Finally, Petitioner asks SME to respond to its overbroad subpoena in an unreasonably short period of time.  If Petitioner's Application is granted, SME would be required, among other things, to prepare 11 extensive reports (Pet'r's App., Ex. A, Requests 1, 2, 4-11, 13) and transmit nearly eight years of accounting records to Petitioner (*Id.* at Requests 9-11, 13-14).  This

---

[28] *United States v. Int'l Bus. Machs. Corp.* 83 F.R.D. 97, 107 (S.D.N.Y. 1979).

information cannot be gathered, processed, and reviewed in 14 days, and a request that SME do so is not warranted given Petitioner's delay in commencing this proceeding.[29]

\* \* \*

Petitioner correctly notes that this Court has the discretion to "trim" burdensome requests. (Pet'r's Mem. 16.)  But Petitioner's sweeping requests for compilations of information and extensive documentation are unmoored in any explanation of their relevance to Arista's production in connection with the German Proceeding, the purported basis for this Application. It is therefore impossible to separate what may be relevant from what is overbroad unduly burdensome.  By electing to serve this type of overly broad request, Petitioner "[ran] the risk that the discovery [would] be denied outright without an opportunity to narrow it."[30]  The Court should deny EPE's 1782 application in its entirety.

## II.    Petitioner's Section 1782 Application Should Also Be Denied Because It Improperly Seeks to Compel SME to Prepare New Documents.

In addition to running afoul of all four *Intel* factors, Petitioner's Requests 1, 2, 4-11, and 13 should be denied in their entirety for an independent reason.  They require SME to create new documents—specifically, detailed custom reports summarizing extensive categories of information.  These requests are not permitted under the Federal Rules or Section 1782 .

---

[29] *See Aventis Pharma*, 2009 WL 3754191, at *2 (holding that there is "no reason why [the court] should support [applicant] in seeking to compel [respondent] to participate in a 'fire drill' over documents" when applicant waited five years to submit application less than three months prior to due date of applicant's brief in foreign proceeding).

[30] *In re Macquarie Bank Ltd.*, 2015 WL 3439103, at *9; *Euromepa*, 51 F.3d at 1101 n.6 (noting that "the court is free to deny the application in toto" when it finds the request "unreasonably seeks cumulative or irrelevant materials").

Rule 45 does not permit a party to use a document request to require the creation of documents that do not already exist.[31]   Yet, while Petitioner styles its discovery request as a subpoena duces tecum pursuant to Rule 45 (Pet'r's Mem. 5, n.2), many of Petitioner's requests ask SME to compile new documents, which is inconsistent with Rule 45, as Petitioner concedes. (Pet'r's App., Ex. A, Reqs. 1, 2, 4-11, 13; Pet'r's Mem. 5, n.2; Conf. Tr. 8:19-21.)   Petitioner supports this request with an inapposite case in which a court permitted a judgment creditor to submit an information subpoena under the New York Civil Practice Law and Rules—not Section 1782.[32]

As a practical matter, EPE's requests are in the nature of interrogatories, with the answers to be summarized in Excel spreadsheets.   Section 1782, however, only authorizes a court to order a party "to give his testimony or statement or to produce a document or other thing," not to create new materials for use in a foreign proceeding.[33]   Accordingly, courts have expressly held that an applicant may not use Section 1782 to serve interrogatories.[34]

---

[31] *See Insituform Techs. Inc. v. Cat Contracting, Inc.*, 168 F.R.D. 630, 633 (N.D. Ill. 1996) ("Rule 45 … does not contemplate that a non-party will be forced to create documents that do not exist."); *cf. In re Sumar*, 123 F.R.D. 467, 473 (S.D.N.Y. 1988) (granting motion to compel compliance with a Rule 45 subpoena issued in a Section 1782 action where "[t]here has been no contention that the documents requested  … require the creation of new documents").

[32] *Estate of Ungar v. Palestinian Auth.*, 451 F. Supp. 2d 607, 612 (S.D.N.Y. 2006).

[33] 28 U.S.C. § 1782(a).

[34] *See In re Ishihara Chem. Co.*, 121 F. Supp. 2d 209, 223-25 (E.D.N.Y. 2000) (holding that the legislative history of Section 1782, the purpose of interrogatories in civil litigation, and the uniqueness of interrogatories to the American legal system preclude an applicant from serving interrogatories under Section 1782), *vacated on other grounds*, *In re Ishihara Chem. Co.*, 251 F.3d 120 (2d Cir. 2001); *Siemens AG v. Western Digital Corp.*, 2013 WL 5947973, at *5 (C.D. Cal. Nov. 4, 2013) ("Because this statutory language refers only to testimony and the production of documents, [respondent] reasons by negative implication that § 1782 does not permit district courts to require parties to respond to interrogatories.   This Court agrees."); *Fleischmann v. McDonald's Corp.*, 466 F. Supp. 2d 1020, 1033 (N.D. Ill. 2006) ("This court interprets this language to include depositions and document production, but not interrogatories.").

The incompatibility of these requests with Section 1782 and the Federal Rules further underscores that this proceeding is an inappropriate method for "verifying" the information produced in the German Proceeding pursuant to German substantive law.

CONCLUSION

For the reasons stated above, SME respectfully requests that this Court deny Petitioner's application for discovery in aid of a foreign proceeding pursuant to 28 U.S.C. § 1782 in its entirety.  If EPE believes that Arista failed to comply with the Judgment of the German Higher Regional Court, it can obtain relief by enforcing that Judgment in Germany; any information SME has is available to Arista in the event the German court orders Arista to provide it.  But EPE cannot instead seek recourse in the U.S. under the guise of a Section 1782 application directed at Arista's parent, in connection with a German case that has been dismissed on the merits.


Dated:    January 20, 2016                    Respectfully submitted,

                                               /s/ Jonathan M. Sperling
                                              Jonathan M. Sperling
                                              Erin Thomas
                                              Benjamin Salk
                                              **COVINGTON & BURLING LLP**
                                              The New York Times Building
                                              620 Eighth Avenue
                                              New York, NY 10018
                                              (212) 841-1000
                                              jsperling@cov.com
                                              ethomas@cov.com
                                              bsalk@cov.com

                                              *Attorneys for Respondent*
                                              *Sony Music Entertainment*

22

**CERTIFICATE OF SERVICE**

      I hereby certify that on January 20, 2016, I caused a true and correct copy of the foregoing to be filed electronically via this Court's CM/ECF system, and that notice of this filing was sent by electronic mail to all parties by operation of that system or by mail to anyone unable to receive electronic filings as indicated on the Notice of Electronic Filing.  Parties may access this filing through the CM/ECF system.

       /s/ Jonathan M. Sperling
      **COVINGTON & BURLING LLP**
      Jonathan Sperling