```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :    15mc386 (DLC)
IN RE APPLICATION OF ELVIS PRESLEY       :
ENTERPRISES LLC FOR AN ORDER TO TAKE     :    OPINION AND ORDER
DISCOVERY PURSUANT TO 28 U.S.C. § 1782   :
                                         :
---------------------------------------- X
```

APPEARANCES:

For the applicant:
Steven C. Douse
King & Ballow
315 Union Street, Suite 1100
Nashville, TN 37201

For the respondent:
Jonathan Michael Sperling
Covington & Burling LLP (NYC)
620 Eighth Avenue
New York, NY 10018

DENISE COTE, District Judge:

The dispute arises from an application to take discovery for use in a foreign proceeding pursuant to 28 U.S.C. § 1782. Elvis Presley Enterprises LLC ("EPE") is party to litigation in Germany against Arista Music ("Arista"). EPE seeks to serve a subpoena on Arista's affiliate Sony Music Entertainment ("SME") to obtain documents that it claims are relevant to the proceedings in Germany. For the reasons that follow, EPE's application is denied.

1

**Background**

In December 2010, EPE commenced a proceeding against Arista in the Regional Court of Munich I.[1]  In the German proceeding, EPE sought information as well as equitable remuneration from Arista.  EPE contends that the amount paid to EPE by Arista is "grossly disproportionate" to the revenues earned in Germany by Arista from exploitation of the rights in Elvis Presley sound recordings.  EPE's request for information in the German lawsuit was a substantive cause of action under German law; it was not a request for discovery in aid of its equitable remuneration claim because there are no general discovery procedures in Germany that require document production.

On November 23, 2011, the German court dismissed the lawsuit.  EPE appealed that dismissal to the Higher Regional Court of Munich.  On July 18, 2013, the Higher Regional Court ordered Arista to provide EPE with information that would be used to calculate EPE's equitable remuneration claim.  The information that the German court ordered produced covered the scope of Arista's exploitation of Elvis Presley's recordings after April 1, 2008.  Arista was ordered to provide at least ten categories of information, including profits earned as a result

---

[1] Arista is the legal successor to RCA Records, which has exploited Elvis Presley's recordings since 1955.  SME is the licensee of Arista and is its corporate parent.

2

of exploiting the sound recordings, royalties received, as well as names and addresses of third party licensees.  This was a substantive judgment that determined the scope of information to which EPE was entitled under German law.

The July 2013 judgment became final on September 3, 2013. Ten months later, in July of 2014, EPE requested that Arista produce the documents encompassed by the July 2013 judgment. That fall, Arista delivered responsive documents, including an Excel spreadsheet.  EPE claims that Arista did not produce all of the information that the German judgment required and that there is some indication that the information produced was inaccurate.  EPE has focused especially on the lack of source documents to support the information in the Excel spreadsheet. Much of the information that EPE seeks in its § 1782 application would, it contends, allow it to verify the information in that spreadsheet.

On December 30, 2014, EPE resumed the German proceeding in the German Regional Court and added SME's German subsidiary as a party to that proceeding.  In April 2015, the German court notified the parties that a hearing would be held on December 16, 2015.  On June 23, EPE wrote to Arista requesting that Arista produce the remainder of the documents it argues were required by the German court's order.  Arista wrote back in August declining to provide any further information.  EPE did

3

not seek relief in the German court for Arista's alleged failure to comply with the judgment; EPE claims that it has no recourse under German law and cannot obtain additional information in Germany.

At the December 16 hearing in the German Regional Court, EPE's German counsel did not argue that the information it received from Arista was deficient, nor did its attorneys mention this § 1782 proceeding.  The German court orally dismissed all of EPE's claims and followed up with a written decision on December 30.  In that decision, the German Regional Court wrote that EPE was not entitled to equitable remuneration.  Moreover, the German decision mentioned Arista's obligation to produce information under the July 2013 judgment.  The December 30 decision did not indicate whether the German court had a view about the sufficiency of the information Arista produced pursuant to that judgment.  EPE appealed this dismissal on January 25, 2016.  That appeal remains pending.

On December 1, 2015, EPE filed the instant application pursuant to 28 U.S.C. § 1782.  The application was brought approximately one year after EPE received documents from Arista and resumed litigation in Germany, and over seven months after it learned of the December 16 hearing date in Germany.

In this § 1782 application, EPE seeks to obtain fourteen categories of information stretching back to 2008, some of which

4

would require SME to generate new reports and spreadsheets. Some of the requests are precise while others are broad and vague. A conference was held on December 7 at which the Court declined to grant the § 1782 application and set a briefing schedule.[2] After extending the briefing schedule to allow the parties to translate and review the December 30, 2015 German judgment, the application became fully submitted on February 3, 2016. On February 11, the Court held a teleconference to address whether the parties could agree on a narrower production. In letters of February 18 and 19, the parties represented that they could not agree on a narrowly tailored production and requested that the Court rule on the merits of the § 1782 application.

## Discussion

28 U.S.C. § 1782 provides in relevant part that:

> The district court of the district in which a person
> . . . is found may order him to give his testimony or
> statement or to produce a document or other thing for
> use in a proceeding in a foreign . . . tribunal. . . .
> The order may be made . . . upon the application of
> any interested person and may direct that the
> testimony or statement be given, or the document or
> other thing be produced, before a person appointed by
> the court.

28 U.S.C. § 1782(a). The statute has three requirements: "(1) the person from whom discovery is sought resides (or is found)

---

[2] The Court was then sitting in Part 1 and has retained jurisdiction over the application.

5

in the district of the district court to which the application is made, (2) the discovery be for use in a proceeding before a foreign tribunal, and (3) the application be made by a foreign or international tribunal or any interested person." Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P., 798 F.3d 113, 117 (2d Cir. 2015) (citation omitted).

Once the three statutory requirements are met, a district court may use its discretion to order discovery under § 1782. Id. The Supreme Court outlined a number of factors that a district court may consider in deciding whether to exercise this discretion. Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004). These have become known as the "Intel factors," and are:

> First, when the person from whom discovery is sought is a participant in the foreign proceeding the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence.
>
> Second, a court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance.
>
> Third, a district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States.

> Finally, unduly intrusive or burdensome requests may be rejected or trimmed.

Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 80-81 (2d Cir. 2012) (citation omitted); Mees v. Buiter, 793 F.3d 291, 298 (2d Cir. 2015) (citation omitted) (listing these four factors).  In weighing these factors, the Court must "tak[e] into consideration the 'twin aims' of the statute."  KPMG, 798 F.3d at 117 (citation omitted).  These aims are "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts."  Id. (citation omitted).

The parties agree that the three statutory requirements are met.  SME is located in the Southern District of New York.  The information sought is for use before a German court, which indisputably constitutes a foreign tribunal.  Third, EPE is a party to that foreign proceeding and therefore has an interest in its outcome.  The analysis here therefore turns on whether the discretionary Intel factors weigh in favor of granting EPE's application.

**I.   Whether the Discovery is Within Reach of the German Court**

The first Intel factor requires the district court to consider whether the information sought in the application is within the jurisdiction of the foreign court.  The factor

7

distinguishes between discovery from participants in the foreign proceeding and nonparticipants because "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." Intel, 542 U.S. at 264. This first factor weighs against applicants who "for all intents and purposes . . . seek[] discovery from . . . their opponent in the German litigation." Schmitz v. Bernstein Liebhard & Lifshitz, LLP., 376 F.3d 79, 85 (2d Cir. 2004) (citing Intel).

This first factor weighs in SME's favor. Although SME is not a party to the German proceeding, Arista is its wholly-owned subsidiary. As such, Arista has access to the documents and information held by SME. Indeed, SME provided information to Arista to enable Arista to comply with the German judgment of July 2013. Thus, a German court could require Arista to produce the very information that EPE seeks through this § 1782 application. Moreover, if EPE believed that Arista's production was deficient it could seek a remedy in the German courts, which includes a fine, as punishment for the failure to comply with the German judgment compelling Arista to produce information. EPE could also move for an order requiring a representative of Arista to certify the accuracy of the information produced.

8

EPE has not meaningfully disputed these facts, and it has not sought relief in the German courts to enforce what it believes to be the appropriate scope of the July 2013 judgment. Although it is not required that EPE exhaust its remedies under German law, the fact that it has not done so here -- when the information in SME's possession is fully accessible to Arista -- weighs against granting the § 1782 application.

EPE's principal argument regarding this factor is that the right to information under German civil procedure is significantly narrower than the discovery available under the Federal Rules of Civil Procedure. The relevance of EPE's discussion of general principles of German discovery is not readily apparent because the July 2013 judgment constituted a substantive determination about the scope of information to which EPE was entitled from Arista. Moreover, the narrower scope of the substantive right to information under German law does not effectively respond to the important fact that all of the information that EPE seeks from SME is available to Arista, its opponent in the German proceeding.

EPE further contends that, in order to obtain the remedy of a fine in Germany, it would have to prove that the information Arista produced was inaccurate or incomplete, which it cannot do without the information it seeks here. While this may be true, EPE has not identified <u>why</u> it believes Arista's production was

incomplete or inaccurate.  Indeed, this argument suggests that Arista's document production complied, at least facially, with the July 2013 judgment and that EPE's desire to obtain further information rests solely on speculation that information disclosed in the German production may have been inaccurate.  Thus, EPE has not made any initial showing of Arista's failure to comply with the German court's order that would justify the issuance of the subpoena here.

**II.  Character of the Foreign Proceedings**

The second <u>Intel</u> factor requires the district court to consider the nature of the proceedings abroad and the receptivity of the foreign court to assistance from United States federal courts.  On December 16, 2015, the German Regional Court dismissed EPE's case and EPE appealed that dismissal on January 25, 2016.  The parties disagree about whether any evidence produced pursuant to the § 1782 application would be admissible in the German appeal.  The parties' dueling declarations reveal that the question requires a nuanced knowledge of German rules of civil procedure.

It is unnecessary to resolve this issue since, even assuming that materials SME produces to EPE in this proceeding are admissible in Germany, this factor still weighs against EPE's application.  See <u>Mees</u>, 793 F.3d at 304 (this "sort of inquiry into foreign procedure [] is best minimized for § 1782

applications"). The second <u>Intel</u> factor suggests that the district court broadly consider the "character of the proceedings underway abroad." <u>Id.</u> at 298; <u>Brandi-Dohrn</u>, 673 F.3d at 80. The parties do not dispute that the German judgment granting EPE the ability to obtain certain information from Arista was a substantive judgment related to EPE's claims for equitable remuneration. That judgment was issued in July of 2013. In late 2014, Arista turned over information that it asserts complied with the 2013 judgment; much of that information came from SME, its corporate parent. In April of 2015 the German court announced that the proceeding would continue on December 16. EPE waited until December 1 to file the instant application in the Southern District of New York. On December 16, the action for equitable remuneration was dismissed, and EPE did not argue at that proceeding that Arista's production was deficient. EPE has not sought redress in the German courts for Arista's purported failure to comply with the July 2013 judgment, even though certain avenues for relief are available.[3]

The procedural posture of the German proceedings and EPE's delayed § 1782 application weigh against granting the discovery

---

[3] SME has represented that if the German court were to order it to produce more materials it would comply with that order. EPE has not made any showing that SME was disingenuous in that representation.

11

it seeks here, even if that information would be admissible in Germany.  EPE's counterarguments focus on whether the materials would be admissible in the German appeal and do not address the delay in its § 1782 application or how the procedural posture of the German litigation bears on the second Intel factor.

### III. Whether the Request Attempts to Circumvent Foreign Law

The third factor requires a district court to consider whether the request for materials constitutes an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country.  There are no general provisions of German law that require document production in litigation.  This fact alone, however, does not mean that EPE's attempt to take discovery here circumvents German law.  After all, "nothing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there."  Intel, 542 U.S. at 260 (discussing the statutory requirements, not the discretionary factors).  See also Mees, 793 F.3d at 303 (emphasizing that there is no foreign discoverability requirement and nothing that "the availability of the discovery in the foreign proceeding should not be afforded undue weight").  A greater showing is required to demonstrate that EPE is attempting to dodge foreign proof-gathering restrictions.

12

The third factor is therefore neutral. SME argues that EPE is attempting to use § 1782 to circumvent the July 2013 judgment of the German court. It contends that, because the judgment requiring Arista to disclose information was substantive, EPE's attempt to obtain information here escapes the scope of the German court's ruling, especially since EPE has not sought relief available to it in Germany. EPE contends that, because Germany's discovery rules do not affirmatively prohibit the production of the information it seeks here, this factor is either neutral or favors granting its application. Moreover, EPE argues that it is not attempting to bypass the German court's authority; rather, it seeks to verify the reliability of Arista's production using information that it contends is only available to it through the instant proceeding. Given that § 1782 does not require EPE to exhaust its remedies in Germany, Mees, 793 F.3d at 303, or to prove that the information would be admissible or discoverable there, this Intel factor is neutral.

**IV. Request is Unduly Burdensome**

The last factor to consider is whether the request at issue is unduly burdensome or intrusive. In evaluating whether a discovery request is "overbroad or unduly burdensome," the district court should "apply[] the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." Mees, 793 F.3d at 302. Rule 26(b)(1) provides that the scope of discovery is

13

limited to "relevant" material that is "proportional to the needs of the case . . . and whether the burden or expense of the proposed discovery outweighs its likely benefit," among other factors.

SME has shown that compliance with EPE's requests would impose a heavy burden and that many of these requests are only minimally relevant to the German proceeding or to verification of the information in the Arista spreadsheet. EPE seeks fourteen categories of information,[4] some of which it admits would require SME to create new documents. Even though EPE has agreed to withdraw several of its original requests, many of the remaining requests require SME to undergo a burdensome process to generate custom reports and compile its response.

EPE's arguments to the contrary are not persuasive. EPE claims that the information it seeks is of the sort typically produced for an audit and therefore is not unduly burdensome. EPE also argues that the information is not overbroad because it only seeks material that would allow it to decipher the Excel

---

[4] On February 18, EPE filed a letter purporting to represent the views of both parties. In that letter, EPE agreed to withdraw five of these specifications, including three of its requests that would require SME to produce a new custom report. EPE also agreed to withdraw request 12 to the extent it is duplicative of request 6 or information already produced by Arista. SME filed a letter on February 19 indicating that it did not agree with how EPE characterized the parties' discussions.

spreadsheet that Arista produced in connection with the German proceeding.[5]  EPE does not, however, identify any specific missing or cryptic sections in Arista's German production, nor does it connect the alleged deficiencies of that production with the requests it makes under § 1782.

Ultimately, the four Intel factors show that granting EPE's application would not serve the twin aims of § 1782.  Again, these aims are "providing efficient means of assistance to participants in international litigation . . . and encouraging foreign countries by example to provide similar means of assistance to our courts."  KPMG, 798 F.3d at 117 (citation omitted).  EPE's requested production would be of minimal assistance in Germany given the procedural posture of that litigation and the fact that the German court retains jurisdiction over the July 2013 judgment that defined the scope of information Arista was obliged to produce.

Although a narrowly-tailored discovery order is preferable to a complete denial of a § 1782 application, Mees, 793 F.3d at 302, a court may "deny rather than merely limit discovery" sought under § 1782 where a narrowly tailored discovery order is not possible.  Schmitz, 376 F.3d at 85; Brandi-Dohrn, 673 F.3d

---

[5] Indeed, it appears from the December 30, 2015 judgment dismissing EPE's claims that the German court was able to use the spreadsheet to determine that EPE was not entitled to equitable remuneration.

at 81 (if "a party's discovery application under section 1782 . . . unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto" (citation omitted)).  On February 11, the Court ordered the parties to meet and confer in an attempt to narrow the proposed subpoenas to a mutually agreeable set of document requests.  The parties were unable to reach agreement and both of them asked the Court to rule on the merits of § 1782 application.  While the Court would ordinarily undertake an independent review of a § 1782 request in an attempt to identify a targeted set of particularly relevant documents whose production would not impose an undue burden, the Court declines to do so here given the posture of the German proceedings, the timing of the § 1782 application, the breadth of EPE's requests, and EPE's limited efforts to narrow its requests.

## Conclusion

EPE's December 1, 2015 application to take discovery pursuant to 28 U.S.C. § 1782 is denied.  The Clerk of Court shall close the case.

Dated:    New York, New York
          March 1, 2016

_____
DENISE COTE
United States District Judge